## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NANCY WILSON, Regional Director of the Sixth
Region of the NATIONAL LABOR RELATIONS
BOARD, for and on behalf of the NATIONAL
LABOR RELATIONS BOARD,

                     Petitioner

         v.

PG PUBLISHING CO., INC. D/B/A PITTSBURGH
POST-GAZETTE,

                   Respondent

Civil No. 2:24-cv-01166

## PETITION FOR INJUNCTION UNDER SECTION 10(j) OF THE NATIONAL LABOR RELATIONS ACT, AS AMENDED

To the Honorable Judges of the United States District Court for the Western District of Pennsylvania:

HERE COMES NOW, Nancy Wilson, Regional Director of the Sixth Region of the National Labor Relations Board (Petitioner), and petitions this Court for and on behalf of the National Labor Relations Board (the Board), pursuant to section 10(j) of the National Labor Relations Act, as amended [61 Stat. 149; 73 Stat. 544; 29 U.S.C. Sec. 160(j)] (the Act), for appropriate injunctive relief pending the final disposition of the matters involved herein pending before the Board on charges alleging that PG Publishing Co., Inc. d/b/a Pittsburgh Post-Gazette (PPG), has engaged in, and is engaging in, acts and conduct in violation of section 8(a)(1) and (5) of the Act. In support thereof, Petitioner respectfully shows as follows:

1.      Petitioner is the Regional Director of the Sixth Region of the Board, an agency of the United States, and files this Petition for and on behalf of the Board.

1

2.      Jurisdiction of this Court is invoked pursuant to section 10(j) of the Act. [61 Stat. 149; 29 U.S.C. Sec. 160(j)], which provides, *inter alia*, that the Board shall have the power, upon issuance of a complaint charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. PPG's business is situated in Pittsburgh and Clinton, both within Allegheny County, Pennsylvania.

3.      (a)      On March 5, 2021, the Newspaper Guild of Pittsburgh, a/w CWA Local 38061 (the NewsGuild) filed an amended charge with the Board in Case 06-CA-263791, alleging that PPG engaged in, and is engaging in, unfair labor practices within the meaning of section 8(a)(1) and (5) of the Act. (A copy of the amended charge in Case 06-CA-263791 is attached hereto as **Exhibit A**.)[1]

(b)      On April 5, 2021, the NewsGuild filed an amended charge with the Board in Case 06-CA-248017 alleging that PPG engaged in, and is engaging in, unfair labor practices within the meaning of section 8(a)(1) and (5) of the Act. (A copy of the amended charge in Case 06-CA-248017 is attached hereto as **Exhibit B**.)

(c)      On October April 16, 2021, Pittsburgh Newspaper Printing Pressmen's / Paper Handlers Local Union No. 9N, a/w The Graphic Communications Conference / IBT Local 24M/9N (the Pressmen) filed an amended charge with the Board in Case 06-CA-268248 alleging that PPG engaged in, and is engaging in, unfair labor practices within the meaning of section

---

[1] On that same date, March 5, 2021, the NewsGuild also filed a fourth amended charge with the Board in Case 06-CA-269346 alleging that PPG surveilled or created the impression of surveillance in violation of Section 8(a)(1) of the Act; however, Petitioner is not seeking injunctive relief concerning that case, so a copy of the charge has not been included.

8(a)(1) and (5) of the Act. (A copy of the amended charge in Case 06-CA-26848 is attached hereto as **Exhibit C**.)[2]

      (d)    On October April 16, 2021, Pittsburgh Typographical Union No. 7, a/w CWA Local 14827 (the Advertisers) filed an amended charge with the Board in Case 06-CA-269416 alleging that PPG engaged in, and is engaging in, unfair labor practices within the meaning of section 8(a)(1) and (5) of the Act. (A copy of the amended charge in Case 06-CA-269416 is attached hereto as **Exhibit D**.)[3]

      (e)    On October 20, 2021, Pittsburgh Mailers Union No. M-22, a/w CWA Local 14842 (the Mailers) filed a third amended charge with the Board in Case 06-CA-263780, alleging that PPG has engaged in, and is engaging in, unfair labor practices within the meaning of section 8(a)(1) and (5) of the Act. (A copy of the third amended charge in Case 06-CA-263780 is attached hereto as **Exhibit E**.)

      (f)    On October 6, 2022, the Pressmen filed an amended charge with the Board in Case 06-CA-302602 alleging that PPG has engaged in, and is engaging in, unfair labor practices within the meaning of section 8(a)(1) and (5) of the Act. (A copy of the amended charge in Case 06-CA-302602 is attached hereto as **Exhibit F**.)

      (g)    On October 6, 2022, the Mailers filed an amended charge with the Board in

---

[2] The Pressman had filed a prior charge with the Board in Case 06-CA-259157 (amended on December 17, 2020) alleging that PPG violated Section 8(a)(1) and (5) of the Act by unilaterally laying off bargaining unit employees covered by a contractual minimum shift guarantee without notice or opportunity to bargain; however, Petitioner is not seeking injunctive relief concerning that case, so a copy of the charge has not been included.

[3] The Advertisers later filed two other charges with the Board: Case 06-CA-302629 (amended on October 6, 2022) alleging that PPG violated Section 8(a)(1) and (5) of the Act by failing to bargain in good faith, and Case 06-CA-311141 (amended on June 2, 2023) alleging that PPG violated Section 8(a)(1) and (5) of the Act by unilaterally ceasing to honor dues deduction authorizations; however, Petitioner is not seeking injunctive relief concerning those cases, so copies of the charges have not been included.

Case 06-CA-302624 alleging that PPG engaged in, and is engaging in, unfair labor practices within the meaning of section 8(a)(1) and (5) of the Act. (A copy of the amended charge in Case 06-CA-302624 is attached hereto as **Exhibit G**.)

4.        The charges referenced in paragraph 3 (Exhibits A through G) were referred to Petitioner for investigation as Regional Director of the Sixth Region of the Board.

5.        (a)        On April 27, 2022, based upon the charges in Cases 06-CA-248017, 06-CA-263791, and 06-CA-269346, referred to above in paragraph 3, and following a full investigation, during which PPG was given an opportunity to submit evidence and legal arguments, the General Counsel of the Board, on behalf of the Board, by Petitioner, issued an Order Consolidating Cases, Consolidated Complaint and Notice of Hearing (the NewsGuild Complaint), alleging that PPG has engaged in, and is engaging in, unfair labor practices within meaning of section 8(a)(1) and (5) of the Act. On August 18, 2022, Petitioner issued an Amendment to the NewsGuild Complaint, correcting PPG's legal name. (A copy of the NewsGuild Complaint and Amendment to Complaint is attached hereto as **Exhibit H**.)

(b)        On May 17, 2023, based upon the charges in Cases 06-CA-263780 and 06-CA-302624, referred to above in paragraph 3, and following a full investigation, during which PPG was given an opportunity to submit evidence and legal arguments, the General Counsel of the Board, on behalf of the Board, by Petitioner, issued an Order Consolidating Cases, Consolidated Complaint and Notice of Hearing (the Mailers Complaint), alleging that PPG has engaged in, and is engaging in, unfair labor practices within meaning of section 8(a)(1) and (5) of the Act. (A copy of the Mailers Complaint is attached hereto as **Exhibit I**.)

(c)        On July 28, 2023, based upon the charges in Cases 06-CA-259157, 06-CA-268248, and 06-CA-302602, referred to above in paragraph 3, and following a full investigation, during which PPG was given an opportunity to submit evidence and legal arguments, the General

Counsel of the Board, on behalf of the Board, by Petitioner, issued an Order Further Consolidating Cases, Second Consolidated Complaint and Notice of Hearing (the Pressmen Complaint), alleging that PPG has engaged in, and is engaging in, unfair labor practices within meaning of section 8(a)(1) and (5) of the Act. (A copy of the Pressmen Complaint is attached hereto as **Exhibit J**.)

(d)     On June 9, 2023, based upon the charges in Cases 06-CA-269416, 06-CA-302692, and 06-CA-311141, referred to above in paragraph 3, and following a full investigation, during which PPG was given an opportunity to submit evidence and legal arguments, the General Counsel of the Board, on behalf of the Board, by Petitioner, issued an Order Further Consolidating Cases, Second Consolidated Complaint and Notice of Hearing (the Advertisers Complaint), alleging that PPG has engaged in, and is engaging in, unfair labor practices within meaning of section 8(a)(1) and (5) of the Act. (A copy of the Advertisers Complaint is attached hereto as **Exhibit K**.)

6.      There is a clear likelihood of success in showing that the allegations set forth in the Complaints referred to above in paragraph 4 are true, and that PPG has engaged in, and is engaging in, unfair labor practices within the meaning of section 8(a)(1) and (5) of the Act [29 U.S.C. section 158(a)(1) and (5)], thereby affecting commerce within the meaning of section 2(6) and (7) of the Act [29 U.S.C. Sec. 152(6) and (7)]. More particularly, in support thereof, and of the request for injunctive relief herein, Petitioner, upon information and belief, shows as follows:

(a)     (1)     At all material times, PPG has been a corporation with offices and places of business in Clinton, Pennsylvania and Pittsburgh, Pennsylvania, and has been engaged in the business of publishing The Pittsburgh Post-Gazette, a print and electronic newspaper.

(2)     Annually, PPG, in conducting its operations described above in subparagraph (a)(1), purchases and receives at its facilities goods valued in excess of $50,000 directly from points outside the Commonwealth of Pennsylvania.

5

(3)     At all material times, PPG has been an employer engaged in commerce within the meaning of section 2(2), (6) and (7) of the Act.

(b)     (1)     At all material times, the NewsGuild has been a labor organization within the meaning of section 2(5) of the Act.

(2)     At all material times, the Mailers has been a labor organization within the meaning of section 2(5) of the Act.

(3)     At all material times, the Pressmen has been a labor organization within the meaning of section 2(5) of the Act.

(4)     At all material times, the Advertisers has been a labor organization within the meaning of section 2(5) of the Act.

(c)     At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of PPG within the meaning of section 2(11) of the Act and agents of PPG within the meaning of section 2(13) of the Act:

| | | |
|---|---|---|
| John Robinson Block | - | Publisher |
| Rob Weber | - | Director of Operations |
| Linda Guest | - | Senior Human Resources Manager |
| Steven Stockdale | - | Director of Human Resources |
| Carolyn Rice | - | Human Resources Manager |
| Jerry Micco | - | Newsroom Manager |
| Brian Bennick | - | Pressroom Supervisor |
| Mike Benednek | - | Production Manager |
| Adam Bush | - | Director of Advertising & Digital Initiatives |
| Bill Cotter | - | Senior Director of Advertising |

(d)     (1)     The following employees of PPG (the Editorial Unit) constitute a

6

unit appropriate for the purpose of collective bargaining within the meaning of section 9(b) of the Act:

> All Editorial Department employees employed by PPG at its facility currently located in Pittsburgh, Pennsylvania, excluding employees covered by other collective-bargaining agreements, all publishers and associate publishers, Publisher and Editor-in-Chief, Executive Editor, Editor of the Editorial Page, Managing Editor, Deputy Managing Editor, Senior Assistant Managing Editor, Assistant Managing Editor, City Editor, Sports Editor, Sunday Editor, Technology Systems Editor, Business Editor, Night Operations Manager, Seen Editor, Associate Editor of Opinion Pages, Editorial Cartoonist, Confidential Secretaries, professional employees, office clerical employees, guards, and supervisors as defined in the Act.

(2)     At all material times, based on section 9(a) of the Act, the NewsGuild has been the exclusive collective-bargaining representative of the Editorial Unit.

(3)     For many years and at all material times, PPG has recognized the NewsGuild as the exclusive collective bargaining representative of the Editorial Unit. This recognition has been embodied in successive collective-bargaining agreements, the most recent of which was effective from October 15, 2014 until March 31, 2017.

(e)     (1)     The following employees of PPG (the Mailers Full-Time Unit) constitute a unit appropriate for the purpose of collective bargaining within the meaning of section 9(b) of the Act:

> All full-time employees of the Mailing Department, including all full-time journeymen and apprentices, but excluding all other employees, confidential employees, guards, managers, professional employees, and supervisors as defined by the Act.

(2)     At all material times, based on section 9(a) of the Act, the Mailers has been the exclusive collective-bargaining representative of the Mailers Full-Time Unit.

(3)     The following employees of PPG (the Mailers Part-Time Unit) constitute a unit appropriate for the purpose of collective bargaining within the meaning of section 9(b) of the Act:

7

> All part-time employees of the Mailing Department, excluding all other employees, confidential employees, guards, managers, professional employees, and supervisors as defined by the Act.

(4)     At all material times, based on section 9(a) of the Act, the Mailers has been the exclusive collective-bargaining representative of the Mailers Part-Time Unit.

(5)     For many years and at all material times, PPG has recognized the Mailers as the exclusive collective bargaining representative of the Mailers Full-Time and Part-Time Units. This recognition has been embodied in successive collective-bargaining agreements, the most recent of which were each effective from November 13, 2014, through March 31, 2017.

(f)     (1)     The following employees of PPG (the Pressmen Unit) constitute a unit appropriate for the purpose of collective bargaining within the meaning of section 9(b) of the Act:

> All journeymen pressmen, paperhandlers, paperhandling pressmen, and apprentice pressmen employed in the Employer's pressroom and paperhandling departments, excluding all other employees, confidential employees, guards, managers, professional employees, and supervisors as defined by the Act.

(2)     At all material times, based on section 9(a) of the Act, the Pressmen has been the exclusive collective-bargaining representative of the Pressmen Unit.

(3)     For many years and at all material times, PPG has recognized the Pressmen as the exclusive collective bargaining representative of the Pressmen Unit. This recognition has been embodied in successive collective-bargaining agreements, the most recent of which was effective from November 26, 2014 until March 31, 2017.

(g)     (1)     The following employees of PPG (the Advertising Unit) constitute a unit appropriate for the purpose of collective bargaining within the meaning of section 9(b) of the Act:

> All regular full time and regular part-time employees of the Advertising Department, excluding all other employees, confidential employees, guards,

8

managers, professional employees, and supervisors as defined by the Act and as named in Article 2 of the most recent collective bargaining agreement.

(2)     At all material times, based on section 9(a) of the Act, the Advertisers has been the exclusive collective-bargaining representative of the Advertising Unit.

(3)     For many years and at all material times, PPG has recognized the Advertisers as the exclusive collective bargaining representative of the Advertising Unit. This recognition has been embodied in successive collective-bargaining agreements, the most recent of which was effective from October 22, 2014 until March 31, 2017.

(h)     (1)     At various times since about March 2017, PPG and the NewsGuild met for the purposes of negotiating a successor collective-bargaining agreement to the agreement described above in paragraph 5(d)(3).

(2)     Since about March 11, 2019, PPG bargained with no intention of reaching agreement by insisting upon proposals that would leave the NewsGuild and the Editorial Unit employees with substantially fewer rights and less protection than provided by law without a contract; and by prematurely declaring impasse.

(3)     By its overall conduct, including the conduct described above in paragraph 5(h)(2), PPG has failed and refused to bargain in good faith with the NewsGuild as the exclusive collective-bargaining representative of the Editorial Unit.

(i)     (1)     At various times since about March 2017, PPG and the Mailers met for the purposes of negotiating successor collective-bargaining agreements to the agreements described above in paragraph 5(e)(5).

(2)     Since about January 30, 2020, PPG bargained with no intention of reaching agreement by insisting upon proposals that would leave the Mailers and the Mailers Full-Time and Part-Time Unit employees with substantially fewer rights and less protection than

provided by law without a contract.

(3)     By its overall conduct, including the conduct described above in paragraph 5(i)(2), PPG has failed and refused to bargain in good faith with the Mailers as the exclusive collective-bargaining representative of the Mailers Full-Time and Part-Time Units.

(j)     (1)     At various times since about March 2017, PPG and the Pressmen met for the purposes of negotiating a successor collective-bargaining agreement to the agreements described above in paragraph 5(f)(3).

(2)     Since about April 29, 2020, PPG bargained with no intention of reaching agreement by insisting upon proposals that would leave the Pressmen and the Pressmen Unit employees with substantially fewer rights and less protection than provided by law without a contract.

(3)     By its overall conduct, including the conduct described above in paragraph 5(j)(2), PPG has failed and refused to bargain in good faith with the Pressmen as the exclusive collective-bargaining representative of the Pressmen Unit.

(k)     (1)     At various times since about March 2017, PPG and the Advertisers met for the purposes of negotiating a successor collective-bargaining agreement to the agreement described above in paragraph 5(g)(3).

(2)     Since about May 25, 2020, PPG bargained with no intention of reaching agreement by insisting upon proposals that would leave the Advertisers and the Advertising Unit employees with substantially fewer rights and less protection than provided by law without a contract.

(3)     By its overall conduct, including the conduct described above in paragraph 5(k)(2), PPG has failed and refused to bargain in good faith with the Advertisers as the exclusive collective-bargaining representative of the Advertising Unit.

(l)     (1)     About July 27, 2020, PPG implemented changes to the following

terms and conditions of Editorial Unit employees' employment:

> (i)     the performance of bargaining unit work by non-unit employees;
>
> (ii)    wages;
>
> (iii)   hours of work;
>
> (iv)    overtime;
>
> (v)     conditions governing part-time and temporary employees;
>
> (vi)    sick leave;
>
> (vii)   layoffs;
>
> (viii)  expenses;
>
> (ix)    conditions governing internships and two-year associates;
>
> (x)     vacation;
>
> (xi)    holidays;
>
> (xii)   promotion and transfer;
>
> (xiii)  severance pay;
>
> (xiv)   leaves of absence;
>
> (xv)    preferential re-employment;
>
> (xvi)   payroll services;
>
> (xvii)  health, dental, and vision insurance;
>
> (xviii) life insurance; and
>
> (xix)   pension.

(2)     The subjects set forth above in paragraph 5(l)(1) relate to wages,

hours, and other terms and conditions of employment of the Editorial Unit and are mandatory

subjects for the purposes of collective bargaining.

(3)     PPG engaged in the conduct described above in paragraph 5(l)(1) without first bargaining with the NewsGuild to an overall good-faith impasse for a successor collective-bargaining agreement.

(m)     (1)     At various times since about June 7, 2022, the Mailers requested that PPG bargain collectively about the effects of the termination of the Mailers Full-Time Unit employees' health insurance coverage.

(2)     The subject set forth above in paragraph 5(m)(1) relates to the wages, hours, and other terms and conditions of employment of the Mailers Full-Time Unit and is a mandatory subject for the purpose of collective bargaining.

(3)     From about June 7, 2022 to September 27, 2022, PPG unreasonably delayed bargaining about the subject set forth in paragraph 5(m)(1).

(4)     From about September 27, 2022 to October 5, 2022, PPG bargained with no intention of reaching agreement about the subject set forth in paragraph 5(m)(1).

(5)     By its overall conduct, including the conduct described above in paragraphs 5(m)(3)-(4), PPG has failed and refused to bargain in good faith with the Mailers as the exclusive collective-bargaining representative of the Mailers Full-Time Unit.

(6)     By its overall conduct, including the conduct described above in paragraph 5(m)(2), PPG has failed and refused to bargain in good faith with the Mailers as the exclusive collective-bargaining representative of the Mailers Full-Time Unit.

(n)     (1)     At various times since about June 7, 2022, the Pressmen requested that PPG bargain collectively about the effects of the termination of the Pressmen Unit employees' health insurance coverage.

(2)     The subject set forth above in paragraph 5(n)(1) relates to the wages,

hours, and other terms and conditions of employment of the Pressmen Unit and is a mandatory subject for the purpose of collective bargaining.

(3)     From about June 7, 2022 to September 27, 2022, PPG unreasonably delayed bargaining about the subject set forth in paragraph 5(n)(1).

(4)     From about September 27, 2022 to October 5, 2022, PPG bargained with no intention of reaching agreement about the subject set forth in paragraph 5(n)(1).

(5)     By its overall conduct, including the conduct described above in paragraphs 5(n)(3)-(4), PPG has failed and refused to bargain in good faith with the Pressmen as the exclusive collective-bargaining representative of the Pressmen Unit.

(o)     By the conduct described above in paragraphs 5(h)–(n), PPG has been failing and refusing to bargain collectively and in good faith with the exclusive collective-bargaining representatives of its employees in violation of section 8(a)(1) and (5) of the Act.

(p)     The unfair labor practices of PPG described above affect commerce within the meaning of section 2(6) and (7) of the Act.

7.     Upon information and belief, it may be fairly anticipated that, unless restrained, PPG will continue its aforesaid unlawful acts and conduct in violation of section 8(a)(1) and (5) of the Act. [29 U.S.C. Sec. 158(a)(1) and (5)].

8.     Upon information and belief, unless the continuation or repetition of the above-described unfair labor practices is restrained, a serious flouting of the Act will continue with the result that enforcement of important provisions of the Act and of public policy will be impaired before PPG can be placed under legal restraint through the regular procedures of a Board order and enforcement degree. Unless injunctive relief is immediately obtained, it may fairly be anticipated that PPG will continue its unlawful conduct during the proceedings before the Board and during subsequent proceedings before a court of appeals for an enforcement decree with the

result that PPG's employees will continue to be deprived of their rights guaranteed in the Act.

9.      No previous application has been made for the relief requested herein.

10.     Upon information and belief, section 10(j) relief is essential, appropriate and just and proper, for purposes of effectuating the policies of the Act and avoiding substantial, irreparable and immediate injury to Board policies, to the public interest, and to PPG's employees. Accordingly, it is requested that PPG be enjoined and restrained from the commission of the conduct alleged above, similar acts and conduct or repetitions thereof, pending the final disposition of the above-referenced Board charges.

WHEREFORE, Petitioner prays:

1.      that the Court enter an order directing PPG to appear before this Court, at a time and place fixed by the Court, and show cause, if any there be, why an injunction should not issue enjoining and restraining PPG, its officers, representatives, agents, servants, employees, attorneys, successors and assigns and all persons acting in concert or participation with it or them, at its Clinton and Pittsburgh, Pennsylvania facilities, pending final disposition of the matters involved herein pending before the Board,

a) to cease and desist from:

i.      failing and refusing to bargain in good faith with the Charging Party Unions as the exclusive collective-bargaining representatives of the various unit employees over successor collective-bargaining agreements, and with the Mailers and Pressmen over interim agreements for health insurance benefits;

ii.     making unilateral changes to the Editorial Unit employees' terms and conditions of employment from the status quo of the most recent collective-bargaining agreement, as construed by the December 2019 arbitration award, absent a valid, good faith impasse in bargaining for a successor agreement; and

14

     iii.    in any other manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them under section 7 of the Act; and,

   b)  to take the following affirmative actions:

     i.    on the Charging Party Unions' requests, immediately bargain collectively and in good faith with the Unions as the exclusive collective-bargaining representatives of the various unit employees concerning their wages, hours, and other terms and conditions of employment and, if an agreement is reached on a successor agreement or interim agreement on health insurance benefits, embody the understanding in a written, signed agreement;

     ii.    on request by the NewsGuild, immediately rescind any or all of the unilateral changes, on a prospective basis, that PPG unlawfully implemented on about July 27, 2020, and restore, honor, and continue the terms of the parties' 2014–2017 collective-bargaining agreement, including with PPG making all prospective increased payments required by the Western Pennsylvania Teamsters and Employers' Welfare Fund, in accordance with the December 2019 arbitration award on this issue;

     iii.    make the affected employees in the Pressmen, Advertisers, and Full-Time Mailers Units whole prospectively for any direct or foreseeable pecuniary harms caused by the loss of health benefits, including prospective reimbursement for out-of-pocket medical and substitute health insurance expenses, suffered as a result of PPG's unlawful bad-faith bargaining and unilateral changes;

     iv.    within five (5) days, post physical copies of the District Court's Injunction Order setting forth the relief granted at PPG's at its Clinton and Pittsburgh, Pennsylvania facilities in English, as well as translations in other languages as necessary to ensure effective communication to PPG's employees as determined by the Board's Regional Director of Region 6, said translations to be provided by PPG at its own expense and approved by the Regional Director,

on the bulletin board, in all breakrooms, and in all other places where PPG typically posts notices to its employees; maintain these postings during the pendency of the Board's administrative proceedings free from all obstructions and defacements; grant all employees free and unrestricted access to said postings; and grant to agents of the Board reasonable access to each worksite to monitor compliance with this posting requirement;

      v.    within five (5) days, distribute electronic copies of the District Court's Injunction Order specifying the relief granted, as well as translations in other languages as necessary to ensure effective communication to PPG's employees as determined by the Board's Regional Director of Region 6, said translations to be provided by the Employer at its own expense and approved by the Regional Director, to all employees employed by PPG at its at its Clinton and Pittsburgh, Pennsylvania facilities at any time since October 1, 2022, via email, and all other intranet or internet sites or apps that PPG uses to communicate with employees;

      vi.    within five (5) days, mail copies of the District Court's Injunction Order specifying the relief granted, as well as translations in other languages as necessary to ensure effective communication to PPG's employees as determined by the Board's Regional Director of Region 6, said translations to be provided by PPG at its own expense and approved by the Regional Director, to all employees employed by PPG at its at its Clinton and Pittsburgh, Pennsylvania facilities at any time since October 1, 2022, via U.S. mail;

      vii.    within seven (7) days of the issuance of the District Court's Injunction Order, convene one or more mandatory meetings, on working time and at times when PPG customarily holds employee meetings and scheduled to ensure the widest possible attendance, at its Clinton and Pittsburgh, Pennsylvania facilities, during which the District Court's Injunction Order specifying the relief granted will be read to the unit employees by a responsible PPG official in the presence of a Board agent, or at PPG's option, by a Board agent in the presence of a responsible

16

PPG official. PPG shall also afford the Unions, through the Regional Director, reasonable notice and opportunity to have representatives present when the Injunction Order is read to employees. Interpreters shall be made available at PPG's expense for any individual whose language of fluency is other than English. The PPG shall announce the meeting(s) for the Injunction Order reading in the same manner it would customarily announce a meeting to employees; the meeting(s) shall be for the above-stated purpose only. Individuals unable to attend the meeting to which they have been assigned will be able to attend a subsequent meeting during which the same reading shall take place under the same conditions. PPG shall allow all employees to attend these meetings without penalty or adverse employment consequences, either financial or otherwise; and

       viii.    within twenty-one (21) days of the issuance of the District Court's Injunction Order, file with the District Court and submit a copy to the Board's Regional Director of Region 6, a sworn affidavit from a responsible PPG official setting forth, with specificity, the manner in which PPG has complied with the terms of the District Court's Injunction Order, including how it has posted the documents required by the Court's decree, including how and where the documents have been posted, and the date(s), time(s), and location(s) that the Injunction Order specifying the relief granted was read to employees and by whom, as required by the Court;

2.    that upon return of the order to show cause, the Court issue and order enjoining and restraining PPG in the manner set forth above; and

3.    that the Court grant such further and other relief as may be just and proper.

Dated at Pittsburgh, Pennsylvania this 14th day of August, 2024.

/s/ Anne E. Tewksbury

Anne E. Tewksbury (Attorney ID: PA 33314)

17

Attorney for the Petitioner
National Labor Relations Board, Region 6
1000 Liberty Avenue, Room 904
Pittsburgh, PA 15222
Telephone: (412) 690-7115
Fax: (412) 395-5986
Anne.Tewksbury@nlrb.gov

/s/ Zuzana Murarova
_____
Zuzana Murarova (Attorney ID: OH 88431)
Attorney for the Petitioner
National Labor Relations Board, Region 6
1000 Liberty Avenue, Room 904
Pittsburgh, PA 15222
Telephone: (412) 690-7122
Fax: (412) 395-5986
Zuzana.Murarova@nlrb.gov

For and on behalf of:

Nancy Wilson, Regional Director
National Labor Relations Board, Region 6
1000 Liberty Avenue, Room 904
Pittsburgh, PA 15222
Telephone: (412) 690-7115

Attachments